UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IMKA POPE,<br><br>    Plaintiff,<br><br>  v.<br><br>TODD McCOMAS, et al.,<br><br>    Defendants. | CASE NO. C07-1191 RSM<br><br>ORDER ADOPTING THE REPORT AND RECOMMENDATION IN ITS ENTIRETY |

  The Court, having reviewed Plaintiff's 42 U.S.C. § 1983 civil rights Complaint, Defendants' Motion for Summary Judgment, the Report and Recommendation of the Honorable James P. Donohue, and the balance of the record, shall adopt the Report and Recommendation but writes separately to address the parties' objections.

## I. DISCUSSION

A. Tolling of the Statute of Limitations

  Defendants object to the finding that the Plaintiff has satisfied the legal standard for the tolling of the statute of limitations. Specifically, Defendants dispute that Plaintiff was incapacitated or unable to understand the nature of her claim for the almost seven year period

1  during which the statute was tolled. Under *Rivas v. Overlake Hospital Medical Center*, a
2  Plaintiff must provide evidence that she was incapacitated to such an extent that she could not
3  understand the nature of the cause of action. 164 Wash.2d 261, 267 (2008). Such a person may
4  be deemed incapacitated where there is "a significant risk of personal harm based upon a
5  demonstrated inability to adequately provide for nutrition, health, housing, or physical safety."
6  *Id.*; RCW 11.88.010(1)(a).

7      The Court finds that Plaintiff has presented significant evidence that her schizoaffective
8  disorder "created a significant risk of personal harm by preventing [P]laintiff from adequately
9  providing herself with nutrition, health, housing, or physical safety throughout her adult life."
10 Dkt. #64 at 13. Plaintiff has experienced frequent bouts of homelessness, has been unable to
11 care for her children, and her mental health counselor at the Community Psychiatric Clinic
12 testified that her symptoms caused "some of the most persistent and disabling
13 symptoms….which caused chronic and severe impacts on her activities of daily living and her
14 ability to take care of herself."  Dkt. #64 at 13-14.

15     Defendants contend that there is evidence that the statute should not have been tolled
16 during Plaintiff's marriage because her husband made sure she took her medication. However,
17 the assistance Plaintiff received from her husband is not sufficient to raise a material fact as to
18 her incapacity in the face of her chronic symptoms and testimony from her mental health
19 counselor. Moreover, the fact that the tolling period in the case at hand is significantly longer
20 than the tolling period in *Rivas* is not persuasive. *Rivas*, 164 Wash.2d 261. Therefore the statute
21 of limitations is tolled as Plaintiff has presented sufficient evidence that her disabling condition
22 has existed since 1997.

23
24

B. Deliberate Indifference to Serious Medical Needs Claims against Defendants McComas and Hustead.

1. The Deliberate Indifference Standard

Defendants object to the finding that there is an issue of material fact as to the deliberate indifference claims against Defendants McComas and Hustead, who are both corrections officers in the jail. With respect to medical needs of persons in custody, the due process clause imposes at least the same duty as the Eighth Amendment, and as such persons in custody have "the right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson v. County of Washoe, Nevada*. 290 F.3d 1175, 1187 (9th Cir. 2002). To prove a violation of a constitutional right, a plaintiff must show that a defendant "[knew] of and disregard[ed] an excessive risk to inmate health and safety." *Id*. In order for a prison official to be held liable, an inmate must show that: (1) the deprivation was objectively sufficiently serious and (2) the prison officials acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To show an official had a culpable state of mind, a plaintiff must prove that (a) an official was aware of facts from which he could have inferred that a substantial risk of serious harm existed, and (b) that the official in fact drew the inference. *Id*. at 837. "Deliberate indifference may be found where prison officials 'deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" Dkt. #64 (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). Conduct that meets the threshold for deliberate indifference must exceed negligence or gross negligence. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Defendants contend that the Court has mischaracterized the evidence with respect to Defendant McComas. Specifically, Defendants state that there is no evidence that Defendant McComas ignored repeated requests for help from the Plaintiff. Defendants further argue that

Defendant McComas' decision to continue finishing his check of the cells before summoning medical assistance can at most constitute negligence or gross negligence because Plaintiff did not appear to be in immediate danger and because the remainder of his check took only 1-2 minutes. However, Plaintiff has presented sufficient evidence to create an issue of material fact. Notably, Plaintiff, though unsure, believed that twenty minutes passed before she received assistance. Dkt. #53 at 6. Moreover, whether or not Defendant McComas ignored repeated requests for help as Plaintiff alleges, he did not stop to investigate or assist Plaintiff when she was plainly in distress, and as such evidence regarding his conduct creates a triable issue of fact as to deliberate indifference.

With respect to Defendant Hustead, Defendants contend that no triable issue of fact exists because Defendant Hustead's report showed that Plaintiff alerted him via intercom at 6:28 that she was having a baby and that just two minutes later he heard a baby crying and called for assistance. Dkt. #60 at 2. Defendants also contend that Defendant Hustead cannot be liable because he only spoke to Plaintiff once via intercom. These contentions are beside the point. It is clear from the facts that Defendant Hustead did not summon assistance until after the baby was born. Moreover, Plaintiff contends that she thought she waited over twenty minutes after pressing the intercom. Dkt. #53 at 6. Plaintiff presents evidence that contradicts evidence presented by Defendants, and therefore creates an issue of fact that must properly be determined by a jury.

2. Qualified Immunity

Qualified immunity seeks to guarantee that public officials who are subjected to suit are on notice that their actions were unlawful. *Hope v. Pelzer*, 536 U.S. 730 (2002). "A court considering a claim of qualified immunity must determine (1) whether the facts shown 'make out a violation of a constitutional right,' and (2) 'whether the right at issue was "clearly established"

1 | at the time of defendant's alleged misconduct,' such that it would be clear to a reasonable officer
2 | that his conduct was unlawful in the situation he confronted." Dkt. #64 at 17-18; *Pearson v.*
3 | *Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815-16 (2009).  When there are genuine issues of
4 | material fact relating to the official's conduct, such questions must be determined by the jury and
5 | summary judgment on the issue of qualified immunity cannot be granted.  *Sinaloa Lake Owners*
6 | *Assn. v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995).

7 |      This Court has already determined that issues of material fact exist as to Defendant
8 | McComas' and Hustead's alleged deliberate indifference to a serious medical need.  Moreover,
9 | as discussed in the Report and Recommendation, when the incident took place "it was already
10 | well-established that deliberate indifference to a prisoner's serious medical needs constituted
11 | cruel and unusual punishment and violated the Eighth Amendment."  *See* Dkt. #64 (citing
12 | numerous decisions on deliberate indifference claims).  The Report and Recommendation
13 | correctly concluded that "this Court cannot determine on summary judgment whether, in light
14 | of…clearly established case law, a reasonable officer could have believed that his conduct was
15 | lawful under the circumstances."  Dkt. #64 at 22.

16 | C.  Deliberate Indifference Claims against Defendant Shumaker

17 |      Plaintiff objects to the finding that she has not satisfied the standard for a deliberate
18 | indifference claim against Defendant Shumaker, and therefore contends that the Court should not
19 | have granted Defendants' Motion for Summary Judgment as to Defendant Shumaker.  Plaintiff's
20 | primary contention is that "[t]here remains copious evidence for a reasonable juror to conclude
21 | that [Plaintiff] was obviously pregnant" (Dkt #67 at 8), and therefore that Defendant Shumaker's
22 | failure to follow through on her observation that Plaintiff was pregnant constitutes deliberate
23 | indifference.  However, the issue is not whether Plaintiff's pregnancy should have been obvious
24 | to Defendant Shumaker.  Rather, the issue is whether Defendant's observation of Plaintiff's

1  pregnancy constitutes conduct sufficient to satisfy the standard necessary to set forth a claim for

2  deliberate indifference.  As discussed *supra*, deliberate indifference may be found where prison

3  officials deny, delay or intentionally interfere with medical treatment.  *Hutchinson v. United*

4  *States*, 838 F.2d 390, 394 (9th Cir. 1988).  As such, mere negligence cannot constitute deliberate

5  indifference.  *See id.*  Therefore, where the negligence of officials caused the insufficient medical

6  treatment of an inmate, the inmate cannot bring a claim for a constitutional violation.  In the case

7  at hand, it may be that Defendant Shumaker was negligent in failing to bring Plaintiff's

8  pregnancy to the attention of other officials and nurses at the facility.  However, there is no

9  evidence that Plaintiff was in any sort of distress relating to her pregnancy when Defendant

10  Shumaker observed her.  Therefore, the mere fact that Defendant observed Plaintiff's pregnancy

11  cannot satisfy the requisite level of culpability needed to bring forth a claim for deliberate

12  indifference.

13  D.  Deliberate Indifference Claims against King County

14        Defendants object to the finding that there is an issue of material fact as to Deliberate

15  Indifference claims brought against Defendant King County.  Defendant contends that no custom

16  or policy of King County caused a violation of Plaintiff's constitutional right to medical care.

17  Specifically, Defendants contend that Plaintiff was unwilling, rather than unable, to respond to

18  medical questions at intake.

19        "To prove municipal liability under §1983, the plaintiff must show that the

20  unconstitutional deprivation of rights arises from a governmental custom, policy, or practice."

21  Dkt. #64 at 22 (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691

22  (1978)).  "To state a constitutional claim against a municipality, a plaintiff must (1) identify the

23  specific 'policy' or 'custom,' (2) fairly attribute the policy or custom and fault for its creation to

24  the municipality, and (3) establish the necessary 'affirmative link' between the indentified policy

1  or custom and the specific constitutional violation." Dkt. #64 at 23 (citing *City of Canton, Ohio*

2  *v. Harris*, 489 U.S. 378, 389 (1989)). Plaintiff has presented evidence that it was King County's

3  policy, custom, or practice to refrain from attempting to perform further physical examination if

4  an inmate refused treatment, or was unwilling or unable to answer questions. Dkt. #52, Ex. C at

5  6-7; Ex D at 15, 26, 36.

6        Defendants' contention is that because Plaintiff was unwilling to answer questions, it was

7  not King County's policy that caused the alleged violation. However, Plaintiff's allegation does

8  not rest on whether an inmate is unwilling or unable to communicate. Rather, regardless of why

9  the inmate is uncommunicative, King County's policy resulted in a violation by creating a

10  situation where necessary medical treatment would not be provided. Defendants put forth that

11  King County staff placed the Plaintiff on a psychiatric floor where she would receive monitoring

12  rather than force her to be subject to a physical examination. Defendants are free to present such

13  facts before a jury. However, regardless of such facts, Plaintiff has nonetheless met her burden

14  of raising a triable issue of fact. As stated in the Report and Recommendation:

> Although it is not the role of this Court to conjecture regarding what [King County Correctional Facility's ("KCCF")] medical screening policy should have been, the Court finds that plaintiff has provided sufficient evidence to present a genuine issue of material fact regarding whether an "affirmative link" exists between KCCF's medical screening policy in 1997 and the denial of adequate medical treatment to plaintiff in this case…[T]he Court is persuaded that a "plainly obvious" consequence of KCCF's policy, custom, or practice of terminating medical screenings of inmates who are unable or unwilling to answer questions may be the denial of constitutionally adequate medical care to those uncommunicative inmates.

21  Dkt. #64 at 24 (citations omitted).

22  Accordingly, an issue of fact exists as to whether King County's policy was deliberately

23  indifferent to inmates' right to medical treatment.

24
ORDER ADOPTING THE REPORT AND RECOMMENDATION IN ITS ENTIRETY - 7

1     Furthermore, Defendants contend that because the Court ruled that several individuals
2 following the policy in question were not deliberately indifferent as a matter of law, similar
3 claims against King County ought to also be dismissed.  However, as discussed *supra*, Plaintiff
4 must satisfy distinct elements to make a showing of deliberate indifference as to prison officials,
5 on the one hand, and as to a municipality, on the other.  In order for a prison official to be held
6 liable, an inmate must show that: (1) the deprivation was objectively sufficiently serious and (2)
7 the prison officials acted with a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S.
8 825, 834 (1994).  By contrast, "[t]o state a constitutional claim against a municipality, a plaintiff
9 must (1) identify the specific 'policy' or 'custom,' (2) fairly attribute the policy or custom and
10 fault for its creation to the municipality, and (3) establish the necessary 'affirmative link'
11 between the indentified policy or custom and the specific constitutional violation."  Dkt. #64 at
12 23 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).  In sum, for an official to be
13 liable, he must have a culpable state of mind.  Such a showing is not necessary with respect to a
14 municipality.

15 E.   Claims of Outrage against Defendants McComas and Hustead.

16     Defendants object to the finding that reasonable minds could differ as to whether the
17 conduct of Defendants McComas and Hustead was extreme and outrageous as required to
18 impose liability for the tort of outrage.  *Orin v. Barclay*, 272 F.3d 1207, 1218 (9th Cir. 2001);
19 *Rice v. Janovich*, 109 Wn.2d 48, 61 (1987).  Whether certain conduct is sufficiently outrageous
20 is ordinarily for the jury to decide.  However, the court may make an initial decision to determine
21 if reasonable minds could differ on whether the conduct was sufficiently extreme to result in
22 liability.  *Dicomes v. State, 113 Wash*., 2d 612, 630 (1989).

23     Defendants contend that Plaintiff's interaction with Defendants McComas and Hustead
24 was minimal, and that she was not visibly distressed.  However, regardless of whether the

interaction was minimal, Defendants were informed by Plaintiff that she believed she was in labor. Even if Defendants interaction or observation of Plaintiff was minimal, they should have been aware that failure to attend to Plaintiff could cause severe emotional distress. Moreover, Defendants and Plaintiff disagree as to the amount of time that passed between when Defendants were notified that Plaintiff was in labor, and the time that she gave birth. This is a factual dispute that must be determined by a jury. The Court therefore finds that issues of fact remain unresolved, and reasonable minds could differ as to whether Defendants' conduct constituted outrage.

F.  Medical Malpractice Claims

   1.  <u>Defendants Dumas, Ilika, Jerskey and Healy</u>

Defendants contend that they are entitled to summary judgment on Plaintiff's medical malpractice claims because Defendants met the appropriate standard of care and because Plaintiff did not suffer an injury. In their objections, Defendants emphasize the language of RCW 7.70.040, which sets the standard in reference to a reasonably prudent health care provider acting under the same or similar circumstances. Specifically, Defendants contend that the standard of care in a correctional setting is different than in the context of a community care setting. While Defendants' expert has presented conflicting testimony, Plaintiff's expert is nonetheless qualified to provide an opinion as to the standard of care. "So long as a physician with a medical degree has sufficient expertise to demonstrate familiarity with the procedure or medical problem at issue, '[o]rdinarily [he or she] will be considered qualified to express an opinion on any sort of medical question, including questions in areas in which the physician is not a specialist.'" *White v. Kent Med. Ctr., Inc.*, 61 Wash. App. 163, 173 (1991).

Moreover, Defendants argue that Plaintiff cannot show that their conduct was the proximate cause of her injury. Defendants predicate this notion on the fact that Plaintiff's labor

1 occurred fast, Plaintiff was uncommunicative, and that Plaintiff did not endure a physical injury.
2 Plaintiff contends that had Defendants' not allegedly breached the standard of care, she would
3 have experienced less physical pain during the birth and that she would have been spared the
4 emotional distress of giving birth alone.  Plaintiff has alleged injury – physical pain and
5 emotional distress.  Moreover, whether Plaintiff's lack of communication constitutes a break in
6 the causal chain may be determined by a jury. Viewing the evidence in the light most favorable
7 to the Plaintiff, there is a material issue of fact as to whether Defendants' conduct was the
8 proximate cause of emotional distress and physical pain that cannot be decided on summary
9 judgment.

   2. Defendant King County

11 Defendants argue that Plaintiff's claim against King County on the theory of corporate
12 negligence fails.  In *Douglas v. Freeman*, the court held that "[t]he doctrine of corporate
13 negligence…is based on a nondelegable duty that a hospital owes directly to its patients." 117
14 Wash.2d 242, 248 (1991).  Moreover, corporate liability extends to harm resulting from both
15 medical professionals, as well as unlicensed employees working within the hospital's "walls."
16 *See id*.  Therefore, corporate liability may attach even where the employees in question, such as
17 Defendants Hustead and McComas, were not practicing medicine.  Moreover, material issues of
18 fact exist with regard to malpractice claims against Defendant medical professionals Dumas,
19 Ilika, Jerskey, and Healy.  Therefore, Plaintiff presents issues of material fact as to Defendant
20 King County's liability for corporate negligence.

**II. CONCLUSION**

22 (1) The Report and Recommendation is APPROVED and ADOPTED;
23 (2) Defendants' Motion for Summary Judgment, Dkt. #43, is GRANTED IN PART
24

1       and DENIED IN PART;

2  (3) The parties are directed to meet and confer within ten (10) days of this Order,

3       and to submit a Joint Status Report not later than twenty (20) days after the date of this

4       Order specifically addressing:

5       (A) expected trial length;

6       (B) proposed trial dates;

7       (C) whether the case is to be tried to a jury or the Court; and

8       (D) whether all parties consent to having Magistrate Judge Donohue hear

9           this case on the merits, pursuant to 28 U.S.C. § 636(c).

10  (4) The Clerk is directed to send copies of this Order to counsel for the parties and

11       to the Honorable James P. Donohue.

13     Dated this 26 day of April 2011.

                                RICARDO S. MARTINEZ
                                UNITED STATES DISTRICT JUDGE

ORDER ADOPTING THE REPORT AND RECOMMENDATION IN ITS ENTIRETY - 11